IN RE INCORPORATION OF TOWN OF AVON LAKE.

No. 49375.

(Reported in 88 N.W.2d 784)

MARCH 11, 1958.

REHEARING DENIED JUNE 6, 1958.

Jones & Rockwell, of Des Moines, for petitioners-appellants.

James M. Stewart and R. W. Brennan, both of Des Moines, for intervenor, Avon Beach Incorporated, appellee.

James D. McKeon, of Des Moines, for Board of Supervisors of Polk County, Iowa.

THOMPSON, J.—This appeal arises because of a judgment of the district court upon a petition for the incorporation of a

proposed municipality to be known as the Town of Avon Lake. The trial court held that chapter 180 of the Acts of the Fifty-seventh General Assembly, an amendment to section 362.1 of the Code of 1954, prevented it taking further action upon a pending petition for incorporation, and entered its judgment dismissing the petition. It is the contention of the appellants that since the petition was filed before July 4, 1957, the effective date of the Act, the court was bound to proceed with the necessary steps to call an election and to incorporate the town if the election resulted in a favorable vote.

We set out herewith the material facts concerning the controversy. The petition for incorporation was filed on March 16, 1957. In accordance with the then existing statutes, the district court appointed commissioners, who in turn called an election upon the proposition to incorporate. On March 28, 1957, Avon Beach Incorporated and other owners of lands within the territory sought to be incorporated filed a petition of intervention. On May 15, 1957, the court appointed commissioners and ordered an election upon the question "Shall the proposition for incorporation be adopted?"

The election was held on June 7, 1957, with the result that 84 "Yes" votes and 82 "No" votes were cast. On June 13, upon hearing, the court set aside the election on the ground that the notice of election contained a defective description of the area proposed to be incorporated. On the same date new commissioners were appointed and another election was ordered. The second election was held on July 1, 1957; with the result that 87 "Yes" votes and 91 "No" votes were cast. The report of election was duly made to the court on July 8, 1957. On August 29, 1957, the court filed its findings of fact, conclusions of law, and judgment, apparently after hearing upon the report of the commissioners. It was found that six persons had voted illegally, apparently because they were not residents of the territory. This being a sufficient number to change the result of the election, it was held void. The court further found as a fact that the territory proposed to be incorporated is within three miles of the City of Des Moines, a city with a population in excess of 15,000. In the meantime, chapter 180, Acts of the 57th G.A.,

supra, having become effective on July 4, 1957, the court held it had no power to take further action upon the incorporation, and dismissed the petition.

I. We set out herewith chapter 180, supra:

"URBANIZED AREA AROUND CITIES

H. F. 374.

"AN ACT creating and establishing an urbanized area for cities having a population of fifteen thousand (15,000) or more; defining the limits of said urbanized area; and prohibiting the incorporation of a new municipality within such urbanized area.

"*Be It Enacted by the General Assembly of the State of Iowa:*

"SECTION 1. Section three hundred sixty-two point one (362.1), Code 1954, is hereby amended by adding thereto the following:

"All territory within three (3) miles of the corporate limits, as the same now exist or may hereafter be established, of any city having a population of fifteen thousand (15,000) or more is hereby declared to be an urbanized area. No territory within said urbanized area shall hereafter be incorporated as a city or town, and the district court shall have no jurisdiction to take any action upon a petition to incorporate a municipality within said area.

"Approved April 1, 1957."

The exact question before us is a narrow one. It may be stated thus: Does chapter 180 prohibit any action upon petitions for incorporation filed before its effective date, or does it apply only to those filed thereafter? It is the contention of the appellants that, since their petition was filed before July 4, 1957, chapter 180 does not apply. They make no complaint of the rulings of the court which held the two elections of June 7 and July 1 respectively were void. Their entire case is bottomed upon the claim that chapter 180 does not operate retrospectively, and their argument in this court deals only with that contention. No claim is made that the legislature did not have the right to make the statute operate in retrospect and indeed it could not well be so contended. Unless there are constitutional prohibitions or limitations, the legislature from which the municipal

corporation derives its existence and its powers may strike it down, or limit it. Judge Dillon, in City of Clinton v. Cedar Rapids and Missouri River Railroad Co., 24 Iowa 455, 475, said:

"The true view is this: Municipal corporations owe their origin to, and derive their powers and rights wholly from, the legislature. It breathes into them the breath of life, without which they cannot exist. As it creates, so it may destroy. If it may destroy, it may abridge and control. Unless there is some constitutional limitation on the right, the legislature might, by a single act, if we can suppose it capable of so great a folly and so great a wrong, sweep from existence all of the municipal corporations in the State, and the corporation could not prevent it. We know of no limitation on this right so far as the corporations themselves are concerned. They are, so to phrase it, the mere tenants at will of the legislature."

So, if the legislature may create or destroy, equally it may limit the process of incorporation; and if the process be incomplete it may strike down what has been done and say, you shall go no further.

II. Clearly the question here is not, did the legislature have the power and the right to make chapter 180 retrospective, but did it do so? It is strongly contended by the appellants that the statute is prospective only. In support of this we are cited to the general rule that the legislative intent is the governing consideration in the interpretation of all statutes, and this includes the determination of whether a given statute is meant to operate retrospectively or prospectively only. Davis v. Jones, 247 Iowa 1031, 1034, 78 N.W.2d 6, 7; 50 Am. Jur., Statutes, section 478, pages 494 to 500 inclusive.

It is also said in the same authorities, and many others, including Grant v. Norris, 249 Iowa 236, 245, 85 N.W.2d 261, 266, that the courts indulge the presumption that statutes are intended to operate prospectively only, and not retrospectively. Retrospection, however, is not entirely excluded; if the intent to bring about retrospective operation clearly appears, the courts will not hesitate so to construe the statute.

The appellants, the proposing incorporators, rely upon the general rule above set forth, upon Grant v. Norris, supra, and upon section 4.1(1), Code of 1954. In Grant v. Norris we held

that a repeal of a Code chapter concerning formation of school districts did not act retrospectively as to proceedings already started under the repealed chapter; and we cited the general rule as to presumptions concerning prospective and retrospective applications of statutes. This was proper, as bearing upon the intent of the legislature; and this intent was made abundantly clear by a saving clause in the repealing act itself, section 34 of chapter 117, Acts of the Fifty-fifth General Assembly which provided "nor shall any proceedings for merger, consolidation * * * or creation of a new school district commenced prior to the effective date of this Act be invalidated by the provisions of this Act." No such provision appears in chapter 180, Acts of the 57th G.A., supra. Grant v. Norris is of little aid to appellants.

We quote herewith from the Code chapter on Construction of Statutes, section 4.1, subsection 1:

> "4.1 Rules. In the construction of the statutes, the following rules shall be observed, unless such construction would be inconsistent with the manifest intent of the general assembly, or repugnant to the context of the statute:
>> "1. *Repeal—effect of.* The repeal of a statute does not revive a statute previously repealed, nor affect any right which has accrued, any duty imposed, any penalty incurred, or any proceeding commenced, under or by virtue of the statute repealed."

We are dealing here with an amendment to a statute rather than with a repeal; but since the amendment does change the existing law we shall assume the application of the section above quoted. It is to be noted that the rules of construction laid down in chapter 4 are to be followed "unless such construction would be inconsistent with the manifest intent of the general assembly." We think, under previous decisions of this court, a construction that chapter 180 was intended to operate prospectively only would be contrary to the "manifest intent" of the legislature.

█ III. Our reasons for the conclusion expressed in the concluding sentence of the preceding division are found in the rules laid down in our previous cases, chiefly Appleby v. Farmers State Bank, 244 Iowa 288, 294, 295, 56 N.W.2d 917, 921; New-

girg v. Black, 174 Iowa 636, 643, 156 N. W. 708, 710; Galusha v. Wendt, 114 Iowa 597, 602, 603, 87 N.W. 512, 514; and Haskel v. City of Burlington, 30 Iowa 232, 233, 234. The rule is expressed in these cases that for the purpose of determining the legislative intent as to retrospective or prospective application of a statute, the courts will look, first, at the language of the Act; second, they will consider the evil to be remedied; and third, whether there was a previously existing statute governing or limiting the mischief which the new Act is intended to remedy. We apply these rules to the situation in the case at bar.

 The finding of the trial court that the area proposed to be annexed lies within three miles of the limits of the City of Des Moines, a city of more than 15,000 population, is not challenged. We turn then to the purpose of the amendment to the existing law made by chapter 180, supra. It must be evident that the legislative intent was to prevent cities having a population of 15,000 or more from being limited in their expansion by the incorporation of other towns or cities immediately surrounding them. This sufficiently appears from the amendment itself; and in addition we take judicial notice of matters of common knowledge such as this. It is said in 31 C.J.S., Evidence, section 95, pages 692, 693: "The courts take judicial notice of rural and urban conditions which are matters of common knowledge."

In this connection see Northwest Merchants Terminal v. O'Rourke, 191 Md. 171, 60 A.2d 743, 751; Sims v. Board of Education, Ky., 290 S. W. 2d 491, 495; Loftin v. City of Miami, Fla., 53 So.2d 654, 658. In State ex rel. Fatzer v. Urban Renewal Agency, 179 Kan. 435, 437, 296 P.2d 656, 659, the Kansas Supreme Court considered a statute intended to eliminate slum areas in cities and to prevent the growth of such sections in the future. The court remarked: "It is a matter of common knowledge that as cities become more populous they are more subject to slum and blighted areas which are injurious to the public health, safety, morals and welfare of the residents * * *."

Judicial notice has been taken of traffic conditions in cities, of housing conditions, of the need of an adequate water supply for a large city, of the growth and development of cities, of the existence of business and residence districts outside the limits of incorporated cities and towns, of property restrictions, and of

many other conditions affecting cities which are of common knowledge. We ourselves have taken judicial notice of existing economic conditions, Murphy v. Smith, 222 Iowa 780, 782, 269 N.W. 748, 749; First Trust Joint Stock Land Bank v. Jelsma, 221 Iowa 1191, 1194, 268 N.W. 76; and of the usual manner of parking motor vehicles in cities and towns, Mooney v. Canier, 198 Iowa 251, 255, 197 N.W. 625. In general see 31 C.J.S., Evidence, section 95, supra, and notes to this section.

Attempts to incorporate smaller towns adjacent to the larger cities of the state have been numerous during the past decade, and have led to much litigation. This court has had occasion to decide several appeals in this class of cases. It is evident that the legislature considered the restriction of the normal growth of the cities to be undesirable; the enactment of chapter 180 demonstrates that. If permitted, this course of action might well result in a slow strangulation of the cities. We need not speculate on the motives of those who attempt to incorporate these lesser municipalities. We know the legislature disapproved their efforts.

Application of the rule laid down in Appleby v. Farmers State Bank and the other cases cited supra, means that we must hold chapter 180 is retrospective in its application. The first test is the language of the statute, quoted above. It seems to apply to any proposed incorporation not yet completed. But, assuming that the language used admits of a fair argument as to its retrospective or prospective intent, application of the second and third tests leaves no room for dispute. The evil to be remedied is the restriction upon the growth of cities, and the incorporation of numerous small towns, many of which might of themselves be unable to furnish police and fire protection and perhaps other services adequate for a locality which is in effect a part of the large urban community of which the city is the center. Without doubt those who wish to incorporate these fringe towns believe the advantages outweigh the disadvantages; but the legislature has found such incorporations harmful. Prior to the enactment of chapter 180 there was no existing law which in any way prevented or remedied this evil. Under these circumstances we have several times said, in the cited cases, that the statute must be considered as retrospective in its application.

We have pointed out that the legislature had the power to prevent incorporations under petitions filed but not yet acted upon as well as under those to be filed in the future. No good reason appears why it should have intended to abate only a part of the mischief apprehended rather than all of it.

IV. Another rule whose reasoning appears sound is stated in 50 Am. Jur., Statutes, section 480, page 503. It is there said: "The fact that a statute carries an emergency clause making it effective immediately, which would be unnecessary if its operation were retrospective, is an indication that the statute was intended to operate prospectively only. On the other hand, the postponement of the time when a statute shall become effective has been held to evidence an intent to make it of retrospective operation." See Chadwick v. City of Crawfordsville, 216 Ind. 399, 24 N. E.2d 937, 944, 129 A. L. R. 469; Louisville Cooperage Co. v. Rudd, 276 Ky. 721, 124 S.W.2d 1063, 1067, 144 A. L. R. 763; Kozisek v. Brigham, 169 Minn. 57, 210 N.W. 622, 49 A. L. R. 1260, 1261; State ex rel. Anderson v. General Accident F. & L. Assurance Corp., 134 Minn. 21, 158 N.W. 715, Ann. Cas. 1918B 615.

Chapter 180 had no emergency clause; it became effective under the general statute, section 3.7, Code of 1954, on July 4 following its enactment on April 1, 1957. Perhaps this rule would not always govern; other considerations in the language of the statute or surrounding conditions might show a legislative intent contrary to that which would be found by a strict following of the principle and the authorities cited in this paragraph. But they add some weight to our conclusion that the legislature intended to remedy all potential or future mischief by the enactment of chapter 180, by making it apply to proceedings commenced but not completed as well as to those which might be instituted thereafter.

We find no error.—Affirmed.

BLISS, GARFIELD, LARSON, OLIVER, and WENNERSTRUM, JJ., concur.

PETERSON, C. J., and HAYS, J., dissent.

SMITH, J., not sitting.