BOARD OF TRUSTEES OF the MUNIC-
IPAL FIRE & POLICE RETIREMENT
SYSTEMS OF IOWA, Appellant,

v.

CITY OF WEST DES MOINES, Appellee.

No. 97–603.

Supreme Court of Iowa.

Dec. 23, 1998.

*Id.* It was administered by a board of trustees. The new law terminated the individual systems and mandated each city to transfer funds to the state system in an amount equal to the accumulated liabilities of its terminated system. *Id.* § 88 (codified at Iowa Code § 411.38 (1991)). This amount became known as the "transition liability."

Prior to 1992, the City of West Des Moines employed three police officers who had previously been employed by other cities in Iowa. During their previous employment, each officer accumulated retirement contributions with their city retirement system. Each city transferred these accrued contributions to the West Des Moines retirement system after the officers' new employment began, and the funds became an asset of the West Des Moines retirement system.

After the state system was implemented, West Des Moines paid to the state board the accumulated liability of its terminated retirement system. In 1994, however, the Board discovered the West Des Moines transition liability payment did not include the liability amount they received on account of the prior service of the three police officers.

The Board determined the additional transition liability of West Des Moines attributable to the prior service of the three officers was $134,870. The Board notified West Des Moines of its obligation to pay this amount, together with accrued interest. The Board calculated the accrued interest on the additional liability through September 30, 1994, to be $38,218. The Board set the interest rate at the greater of the actuarial interest rate assumption on investments of the funds in the system or the actual investment earnings of the fund for the fiscal year. Consequently, the interest was calculated to be 7.5% compounded from January 1, 1992, until December 31, 1993, and 13.3% compounded from January 1, 1994, to September 30, 1994.

West Des Moines paid the additional transition amount plus accrued interest as of September 30, 1994. However, the payment was not received by the Board until November 8, 1994. The Board then requested the additional interest to the date of payment. The City refused.

Douglas E. Gross, Sean R. Moore, Scott L. Long, and Alice E. Helle of Brown, Winick, Graves, Gross, Baskerville and Schoenebaum, P.L.C., Des Moines, for appellant.

Jack W. Rogers of George, Schwarz & Rogers, Des Moines, for appellee.

Considered by McGIVERIN, C.J., and CARTER, LAVORATO, SNELL, and CADY, JJ.

CADY, Justice.

The City of West Des Moines challenged the authority of the Board of Trustees of the state retirement system for police officers and fire fighters to charge interest on unpaid transition liability under Iowa Code section 411.38 (1995) in excess of the general statutory rate of five percent per annum. The district court determined the Board was not authorized to charge interest in excess of five percent. The Board appealed. We reverse and remand.

The origin of this dispute dates back to 1990 when our legislature amended Iowa Code chapter 411 to create a single statewide police officers and fire fighters retirement system. 1990 Iowa Acts ch. 1240, § 85 (codified at Iowa Code § 411.35 (1991)). Prior to that time, individual cities administered separate retirement systems for their police officers and fire fighters.

The state system became effective January 1, 1992, and required each city to participate.

The Board subsequently commenced an action against West Des Moines seeking to collect $2467 for unpaid accrued interest on the City's additional transition liability. The City filed a counterclaim for $18,833. It claimed the Board had no authority to charge interest in excess of the general statutory rate of five percent per annum.

At the time the action was commenced, Iowa Code section 411.38 specifically authorized the Board to determine any additional transition liability attributable to errors and omissions.[1] Iowa Code § 411.38(1)(b) (1995). It also permitted the Board to enter into an amortization agreement with cities for the payment of this additional liability over a period of time not to exceed thirty years. *Id.* Additionally, section 411.38 permitted the Board to charge interest on the amortized amount that was at least equal to the estimated rate of return on the investments of the state system. *Id.* Yet, there was no similar provision for interest in the absence of an amortization agreement.

In 1996, while this action was pending, the legislature amended section 411.38. The amendment specifically authorized the Board to charge interest as it did for the additional transition liability of West Des Moines.[2]

---

1. Section 411.38 provided:

 1. Upon the establishment of the statewide system, each city participating in the statewide fire and police retirement system shall do all of the following:

 *a.* Pay to the statewide system the normal contribution rate provided pursuant to section 411.8.

 *b.* Transfer from each terminated city fire or police retirement system to the statewide system amounts sufficient to cover the accrued liabilities of that terminated system as determined by the actuary of the statewide system. The actuary of the statewide system shall redetermine the accrued liabilities of the terminated systems as necessary to take into account additional amounts payable by the city which are attributable to errors or omissions which occurred prior to January 1, 1992, or to matters pending as of January 1, 1992. If the actuary of the statewide system determines that the assets transferred by a terminated system are insufficient to fully fund the accrued liabilities of the terminated system as determined by the actuary as of January 1, 1992, *the participating city may enter into an agreement with the statewide system to make additional annual contributions sufficient to amortize the unfunded accrued liability of the terminated system. The terms of an amortization agreement shall be based upon the recommendation of the actuary of the statewide system,* and the agreement shall do each of the following:

 (1) Allow the city to make additional annual contributions over a period not to exceed thirty years from January 1, 1992.

 (2) *Provide that the city shall pay a rate of return on the amortized amount that is at least equal to the estimated rate of return on the investments of the statewide system for the years covered by the amortization agreement.*

 (3) Contain other terms and conditions as are approved by the board of trustees for the statewide system. In the alternative, a city may treat the city's accrued unfunded liability for the terminated system as legal indebtedness to the statewide system for the purposes of section 384.24, subsection 3, paragraph *"f"*.

 *c.* Contribute additional amounts necessary to ensure sufficient financial support for the statewide fire and police retirement system, as determined by the board of trustees based on information provided by the actuary of the statewide system.

 2. It is the intent of the general assembly that a terminated city fire or police retirement system shall not subsidize any portion of any other system's unfunded liabilities in connection with the transition to the statewide system. The actuary of the statewide system shall determine if the assets of a terminated city fire or police retirement system would exceed the amount sufficient to cover the accrued liabilities of that terminated system as of January 1, 1992, using the alternative assumptions and the proposed assumptions.

 Iowa Code § 411.38 (1995) (emphasis added).

2. The legislature amended section 411.38(1)(b) to read:

 Transfer from each terminated city fire or police retirement system to the statewide system amounts sufficient to cover the accrued liabilities of that terminated system as determined by the actuary of the statewide system. The actuary of the statewide system shall redetermine the accrued liabilities of the terminated systems as necessary to take into account additional amounts payable by the city which are attributable to errors or omissions which occurred prior to January 1, 1992, or to matters pending as of January 1, 1992. If the actuary of the statewide system determines that the assets transferred by a terminated system are insufficient to fully fund the accrued liabilities of the terminated system as determined by the actuary as of January 1, 1992, the participating city shall pay to the statewide system an amount equal to the unfunded liability plus interest for the period beginning January 1, 1992, and ending with the date of payment or the date of entry into an amortization agreement pursuant to this section. Interest on the unfunded liability

The Board and the City both filed motions for summary judgment. The district court interpreted chapter 411 to limit the Board's authority to charge interest to five percent.[3] It determined the 1996 amendment applied prospectively and did not consider it in its decision. Consequently, the district court granted West Des Moines' motion for summary judgment.

## I. Standard of Review.

 We review a summary judgment ruling for errors at law. *Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd. v. Farmland Mut. Ins. Co.*, 568 N.W.2d 815, 817 (Iowa 1997). Similarly, our review for issues involving statutory construction is for legal error. *Schneider Leasing, Inc. v. United States Aviation Underwriters, Inc.*, 555 N.W.2d 838, 840 (Iowa 1996).

## II. Applicable Interest Rate.

 When confronted with the interpretation of a statute which has been amended prior to trial, we employ a two-tiered analysis. If the amendment clarifies the statute, the former statute is interpreted with the aid of the legislative clarification. *See Barnett v. Durant Community Sch. Dist.*, 249 N.W.2d 626, 629 (Iowa 1977). On the other hand, if the amendment changes the statute and the change helps resolve the underlying disputed issue, the amendment becomes the focus of the inquiry and the court must determine if the legislature intended the change to apply retrospectively or prospectively. *See Emmet County State Bank v. Reutter*, 439 N.W.2d 651, 653–54 (Iowa 1989).

Numerous considerations exist to help ascertain the purpose of legislation under the

two-tiered approach. *See Barnett*, 249 N.W.2d at 629. The distinction, however, between legislative clarification and legislative change narrows considerably when the amendment unambiguously resolves the dispute and was intended to apply retrospectively. In that situation, there typically is little need to interpret the former statute by applying all relevant rules of construction. *See First Nat'l Bank v. Diers*, 430 N.W.2d 412, 414 (Iowa 1988) (where legislature clearly expressed its intent for a statute to apply retrospectively, there is no need to resort to the rules of statutory construction). The retrospective nature of legislation usually controls. *Id.*

 In this case, the district court found the amendment did not clarify the existing statutory scheme. Instead, it determined the amendment changed the statute to specifically authorize the Board to charge the enhanced interest rate, but concluded the amendment applied prospectively. The district court then looked to the other rules of statutory construction to reach its conclusion that the former statute did not authorize the enhanced interest rate. Although the district court conducted a thorough analysis, we conclude it erred in concluding the amendment applied prospectively.

 Generally, a newly enacted statute is applied prospectively. *Emmet County State Bank*, 439 N.W.2d at 653; Iowa Code § 4.5. While this rule is nearly always followed when the legislation relates to substantive rights, we recognize a statute or amendment may be applied retrospectively when it relates solely to a remedy or procedure.[4] *See Janda v. Iowa Indus. Hydraulics, Inc.*, 326 N.W.2d 339, 344 (Iowa 1982); *Emmet County State Bank*, 439 N.W.2d at 653. This

---

shall be computed at a rate equal to the greater of the actuarial interest rate assumption on investments of the moneys in the fund or the actual investment earnings of the fund for the applicable calender year. The participating city may enter into an agreement with the statewide system to make additional annual contributions sufficient to amortize the unfunded accrued liability of the terminated system. The terms of an amortization agreement shall be based upon the recommendation of the actuary of the statewide system, and the agreement shall do each of the following:

1996 Iowa Acts ch. 1187, § 107.

**3.** The source of this limitation is Iowa Code section 535.2 (1995), which limits interest to five percent per annum subject to specified exceptions or an agreement of the parties.

**4.** We have also determined curative legislation or emergency legislation may be given retrospective application. *See Thorp v. Casey's General Stores, Inc.*, 446 N.W.2d 457, 462–63 (Iowa 1989); 2 Norman Singer, *Sutherland Statutory Construction* § 41.11 (5th ed.1993).

is true even when the statute is applied to proceedings pending on the effective date of the amendment. *Schuler v. Rodberg*, 516 N.W.2d 902, 904 (Iowa 1994). Nevertheless, we ultimately look to legislative intent to determine the outcome. *State ex rel. Turner v. Limbrecht*, 246 N.W.2d 330, 332 (Iowa 1976), *overruled on other grounds by State ex rel. Miller v. Hydro Mag, Ltd.*, 436 N.W.2d 617, 622 (Iowa 1989).

■■■ A remedial statute affords a private remedy to a person injured by a wrongful act, corrects an existing law or redresses an existing grievance, gives a party a mode of remedy for a wrong where none or a different remedy existed, or remedies defects in the common law and in civil jurisprudence generally. *State ex rel. Turner*, 246 N.W.2d at 332. Substantive law creates, defines, and regulates rights, while procedural law governs the practice, method, procedure, or legal machinery by which the substantive law is enforced or made effective. *First Nat'l Bank in Lenox v. Heimke*, 407 N.W.2d 344, 346 (Iowa 1987) (quoting *Baldwin v. City of Waterloo*, 372 N.W.2d 486, 491 (Iowa 1985)).

■■■ We have already determined an amendment which provides for a new interest rate is remedial in nature and may be applied retrospectively. *See Janda*, 326 N.W.2d at 344. Nevertheless, we apply a three-part test to determine whether the legislature intended to give each statute retrospective or prospective application. *Emmet County State Bank*, 439 N.W.2d at 654. This test requires us to first look to the language of the new legislation. *Id.* Second, we examine the evil to be remedied. *Id.* Finally, we address whether there was a previously existing statute governing or limiting the mischief which the new legislation was intended to remedy. *Id.* The district court relied exclusively upon the general rule and failed to consider these tests.

We first consider the language of the amendment. It is plain from the amending language in section 411.38(1)(b) the legislature intended to establish a special interest rate on a city's additional transition liability. While section 411.38 did not specifically call for retrospective application, it expressly made the interest applicable beginning January 1, 1992, the date the cities were originally required to transfer the transition liability. Thus, the transaction targeted by the legislature for the imposition of interest was the past transaction involving the insufficient transfer, not the later transaction involving the discovery of the insufficient transfer. *See Walker State Bank v. Chipokas*, 228 N.W.2d 49, 51 (Iowa 1975) (a retrospective law includes one which creates a new obligation, imposes a new duty, or attaches a new disability in respect to transactions already past). This reveals the legislature intended retrospective application of the amendment.

The nature of the evil to be remedied, in this case is more revealing. The amendment gave the Board specific authority to charge the enhanced interest rate on the amount of the insufficient transfer for the period beginning January 1, 1992. Prior to the amendment, the Board had established the identical practice. This Board policy, however, was being challenged.[5] The wrong sought to be remedied by the amendment was identical to the justification for the Board's practice. The Board wanted the cities who had previously transferred insufficient funds to pay an amount representing the rate of return the Board would have received had sufficient funds been transferred. The Board had been deprived of the opportunity to earn the rate of return on these untransferred funds, while the cities retained this opportunity. Moreover, the loss of the return by the Board would ultimately be shared by all participating cities, contrary to the expressed legislative intent that no city subsidize another city's transition liability. *See* Iowa Code § 411.38(2). The nature of the wrong was retrospective which required retrospective

---

5. Neither party has controverted the amendment as a legislative attempt to affect pending court litigation in violation of the separation of powers doctrine. *But see State ex rel. Lankford v. Mundie*, 508 N.W.2d 462, 463 (Iowa 1993); *McSurely v. McGrew*, 140 Iowa 163, 167, 118 N.W. 415, 417 (1908). We accordingly do not address the issue. *Braden v. Board of Supervisors*, 261 Iowa 973, 975, 157 N.W.2d 123, 124 (1968) (proposition neither assigned or argued is not considered).

action. We think this indicates the legislature intended the amendment to apply retrospectively.

Finally, we look to the prior statute to determine if it addressed the problem which the amendment sought to remedy. The prior statute authorized interest on the amount of the amortization agreement entered into with cities after an insufficient transfer had been discovered and the amount determined. Yet, it included no similar provision for interest on the amount of the insufficient transfer from the date of the original transfer to the date of the amortization agreement. The legislature sought to rectify this problem by the amendment and there is no good reason why it would only want to remedy part of the problem by applying the amendment prospectively. We believe the legislature intended to remedy the entire problem so all cities would be affected in the same manner. *Emmet County State Bank,* 439 N.W.2d at 655.

We therefore conclude when considering the language of the amendment, the evil to be remedied, and the existing statute at the time of the amendment, the legislature intended retrospective application of the amendment. Accordingly, we reverse the district court decision and remand the case with directions to enter summary judgment in favor of the Board.

**REVERSED AND REMANDED.**