**IN THE COURT OF APPEALS OF IOWA**

No. 3-1205 / 13-0124
Filed March 26, 2014

AMISH CONNECTION, INC.,
 Plaintiff-Appellant,

vs.

STATE FARM FIRE AND CASUALTY
COMPANY,
 Defendant-Appellee.
_____

Appeal from the Iowa District Court for Black Hawk County, Kellyann M. Lekar, Judge.

Insured appeals an adverse grant of summary judgment holding loss was not covered by insurance policy. **REVERSED AND REMANDED.**

Samuel C. Anderson and Joseph G. Martin of Swisher & Cohrt, P.L.C., Waterloo, for appellant.

Mark W. Thomas of Grefe & Sidney, P.L.C., Des Moines, for appellee.

Considered by Vogel, P.J., and Mullins and McDonald, JJ.

**McDONALD, J.**

What is the meaning of "rain"? That is the question presented in this insurance coverage dispute. Amish Connection, Inc., (hereinafter "Amish Connection") appeals from an adverse grant of summary judgment in which the district court held, as a matter of law, Amish Connection's loss was not covered under a business insurance policy issued by State Farm Fire & Casualty Company (hereinafter "State Farm") due to a limitation on "loss . . . to the interior of any building or structure, or the property inside any building or structure, caused by rain." We reverse the judgment of the district court and remand for further proceedings.

I.

Amish Connection leased space in the Crossroads Shopping Mall in Waterloo to operate the Amish Connection Store. At all times relevant to this suit, Amish Connection was using the leased space only for storage. Above the ceiling and along the interior back wall of Amish Connection's leased space was a four-inch cast iron drain pipe connected to the building's roof drain line. The roof drain system in the mall was designed to collect water on the roof and transport the water through interior pipes in the mall and down to the storm sewer. On the evening of June 14 and the morning of June 15, 2010, it rained heavily in Waterloo. At some point during this storm, the drain pipe over Amish Connection's unit burst, flooding portions of Amish Connection's storage space and causing damage to the unit and the property within.

Amish Connection purchased a business policy from State Farm. The policy insured "for accidental direct physical loss to property . . . unless the loss is: 1. limited in the PROPERTY SUBJECT TO LIMITATIONS section; or 2. Excluded in the LOSSES NOT INSURED section" of the policy. On or about June 16, 2010, Amish Connection submitted a claim to State Farm for the water damage to its storage space and inventory. By letter dated the same day, State Farm denied Amish Connection's claim for coverage, citing a limitation in the PROPERTY SUBJECT TO LIMITATIONS section of the policy for loss "caused by rain."

On December 27, 2010, Amish Connection initiated this proceeding. In its amended petition, Amish Connection asserted a claim against State Farm for breach of contract arising out of State Farm's denial of Amish Connection's claim. State Farm filed its motion for summary judgment, arguing that the rain limitation precluded recovery for Amish Connection's loss. The district court agreed and granted State Farm's motion for summary judgment.

II.

Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3). The party seeking summary judgment has the burden of establishing that the facts are undisputed and that the party is entitled to judgment as a matter of law. *See Estate of Harris v. Papa John's Pizza*, 679 N.W.2d 673, 677 (Iowa

2004). Summary judgment is correctly granted where the only issue to be decided is what legal consequences follow from otherwise undisputed facts. *See Emmet Cnty. State Bank v. Reutter*, 439 N.W.2d 651, 653 (Iowa 1989). We review the district court's grant of summary judgment for correction of errors at law. *See Boelman v. Grinnell Mut. Reins. Co.*, 826 N.W.2d 494, 500 (Iowa 2013

III.

The standards for interpreting and construing insurance policies are well established, and they need not be repeated at any great length here. *See Boelman*, 826 N.W.2d at 501-02. We begin our analysis by looking at the plain language of the policy. The policy provides that State Farm will pay for "accidental direct physical loss to property covered" unless the loss is otherwise limited or excluded. State Farm contends Amish Connection's loss is not within the initial grant of coverage pursuant to the following limitation on loss "caused by rain":

PROPERTY SUBJECT TO LIMITATIONS

We will not pay for loss:

. . . .

6.     to the interior of any building or structure, or the property inside any building or structure, caused by rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:
a.     the building or structure first sustains damage by an insured loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or
b.     the loss is caused by thawing of snow, sleet or ice on the building or structure;

"Rain" is not a defined term in the policy. "Words that are not defined in the policy are given their ordinary meaning, one that a reasonable person would understand them to mean." *Bituminous Cas. Corp. v. Sand Livestock Sys., Inc.*, 728 N.W.2d 216, 220-21 (Iowa 2007) (citation and internal quotation marks omitted). The ordinary meaning of "rain" is well understood. Gene Kelly sang in it. Noah sailed through it. It is water falling from the sky. The common understanding of "rain" is reinforced by reference materials. *See* Merriam-Webster, http://www.merriam-webster.com/dictionary/rain (last visited January 7, 2014) (defining "rain" as "water falling in drops condensed from vapor in the atmosphere"); Webster's Third New Int'l Dictionary (Unabridged) 1876 (1993) (same). We think it fair to say that a reasonable person standing in the interior of a shopping mall underneath a burst drain pipe would not conclude that he or she was standing in the "rain." Under the plain language of the policy, Amish Connection's loss is not limited by the provision on which State Farm relies.

The district court reached the opposite conclusion. In State Farm's memorandum in support of motion for summary judgment and at oral argument on the motion, State Farm argued the water emitted from the burst pipe was "rainwater." Because the water from the pipe was "rainwater," State Farm contended the limitation applied. The district court agreed with the proposed interpretation. In ruling on State Farm's motion for summary judgment, the district court stated, "The Court does not find that the language in the policy is ambiguous. Rainwater only has one plain meaning." The district court then analogized the interior drain system in the mall to an external gutter. Because

the water collected in an external gutter "would unquestionably be considered rainwater," the court determined "as a matter of law the water running through the pipe which caused the loss on the leased premises was rainwater." Accordingly, the district court held, the loss was not within the initial grant of coverage. We conclude the district court erred.

First, "[t]he plain meaning of the insurance contract generally prevails." *Boelman*, 826 N.W.2d at 501. Here, the policy limits coverage for loss "caused by rain." The policy does not use the term "rainwater." The distinction is important. As previously stated, "rain" is water falling in condensed drops from the atmosphere. "Rainwater" is a separate and distinct term meaning "water fallen as rain that has not had an opportunity to collect soluble matter from the soil." Webster's Third New Int'l Dictionary (Unabridged) 1876 (1993). The definitions of "rain" and "rainwater," although similar, encompass two different points in time. As water is falling, it is considered "rain." After it has fallen—and, as here, been collected on a rooftop and channeled into pipes for transport to a storm sewer—it is considered "rainwater." As one court noted:

> "Rain" is ordinarily and commonly thought of as water falling from the sky. After it stops falling, one does not say that it is "raining" although there may still be wet sidewalks and streets, puddles of water resulting from the rain, or water running through gutters and elsewhere as a result of the rain. It is not common or usual to say in such instances that it is still raining . . . . If, by definition, "rain" remains "rain" after it stops falling, then the water in streams and lakes, coming from household faucets, etc. is "rain" since it originated, partly at least, from water that fell from the sky.

*State Farm Fire & Cas. Co. v. Paulson*, 756 P.2d 764, 767 (Wyo. 1988) (holding that "rain" became "surface water" upon striking the earth, and therefore, water

that entered the building through a broken window was excluded under a "surface water" exclusion); *see also Unobskey v. Cont'l Ins. Co.*, 86 A.2d 160, 164 (Me. 1952) (noting that in an insurance policy excluding damage "caused by rain," the exclusion would not apply to "damage caused by running surface water from rainstorm"). While the water emitting from the burst pipe may fall within the definition of "rainwater," it does not fall within the definition of "rain". Because loss caused by "rainwater" is not excluded or otherwise limited under the policy, the district court erred in interpolating the term "rainwater" into the policy and concluding the interpolated term was unambiguous.

Second, even if "rain" could have a secondary meaning encompassing "rainwater," ambiguities in limitation provisions must be construed in favor of the insured. *See LeMars Mut. Ins. Co. v. Joffer*, 574 N.W.2d 303, 307 (Iowa 1998) ("Because of the adhesive nature of insurance policies, their provisions are construed in the light most favorable to the insured."). Thus, exclusions from and limitations of coverage are construed strictly against the insurer. *See id.* "[W]hen an insurer has affirmatively expressed coverage through broad promises, it assumes a duty to define any limitations or exclusionary clauses in clear and explicit terms." *Bituminous Cas. Corp.*, 728 N.W.2d at 220 (citation and internal quotation marks omitted) (alteration in original). "Where the meaning of terms in an insurance policy is susceptible to two interpretations, the one favoring the insured is adopted." *N. Star Mut. Ins. Co. v. Holty*, 402 N.W.2d 452, 454 (Iowa 1987). Thus, to the extent that "rain" could be interpreted to mean "rainwater,"

the ambiguity should have been construed in favor of Amish Connection and against State Farm.

IV.

The district court erred by finding that the rain limitation was applicable to this case. The court has considered the parties' remaining arguments and concludes that the arguments are best addressed in the district court in the first instance. The judgment of the district court is reversed and the matter is remanded for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**