# IN THE SUPREME COURT OF IOWA

No. 18–0839

Filed September 13, 2019

**STATE OF IOWA,**

Appellee,

vs.

**ERIN MACKE,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Carol S. Egly, District Associate Judge.

Defendant alleging State breached plea agreement seeks further review of court of appeals decision affirming her conviction and sentence for child endangerment. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT CONVICTION AFFIRMED, SENTENCE VACATED, AND CASE REMANDED FOR RESENTENCING WITH INSTRUCTIONS.**

Angela L. Campbell of Dickey & Campbell Law Firm, PLC, Des Moines, for appellant.

Thomas J. Miller, Attorney General, Thomas J. Ogden, Assistant Attorney General, John P. Sarcone, County Attorney, and Nan Horvat, Assistant County Attorney, for appellee.

**WATERMAN, Justice.**

This case is among dozens of pending appeals presenting the question whether amendments to Iowa Code sections 814.6 and 814.7 enacted in Senate File 589 (the Omnibus Crime Bill) govern our review of an appeal from a final judgment and sentence entered before the new statute's effective date of July 1, 2019. Amended section 814.6 limits direct appeals from guilty pleas, and amended section 814.7 requires ineffective-assistance claims to be brought in postconviction proceedings rather than by direct appeal.

In 2018, defendant, Erin Macke, entered an *Alford* plea to four counts of child endangerment pursuant to an alleged plea agreement she contends obligated the State to jointly recommend a deferred judgment. At the sentencing hearing, the State instead recommended, and the court imposed, a two-year suspended prison sentence without objection from defense counsel. The defendant appealed with new counsel, claiming the State had breached the plea agreement and her defense counsel was ineffective for failing to object. On March 20, 2019, the court of appeals affirmed her conviction and sentence while preserving her ineffective-assistance claim for postconviction proceedings. Senate File 589 subsequently was signed into law and became effective July 1 of this year. We granted Macke's application for further review and directed the parties to file supplemental briefs on whether the new law applies. The State argues Senate File 589 forecloses relief in this direct appeal while Macke argues the amendments are inapplicable.

On our review, we hold Iowa Code sections 814.6 and 814.7, as amended, do not apply to a direct appeal from a judgment and sentence entered before July 1, 2019. We have long held that "unless the legislature clearly indicates otherwise, 'statutes controlling appeals are those that

were in effect at the time the judgment or order appealed from was rendered.'" *James v. State*, 479 N.W.2d 287, 290 (Iowa 1991) (quoting *Ontjes v. McNider*, 224 Iowa 115, 118, 275 N.W. 328, 330 (1937)). Senate File 589 lacks language indicating the legislature intended the amendments to sections 814.6 or 814.7 to apply to appeals from judgments entered before its effective date. We decline the State's invitation to overrule *James* or follow arguably contrary federal authority. On the merits, we determine the State breached the plea agreement and Macke's original counsel was ineffective for failing to object. We vacate her sentence and remand the case for the State's specific performance of the plea agreement and resentencing by a different judge.

## I. Background Facts and Proceedings.

In 2017, Erin Macke, age thirty-one, lived with her four children, ages six, seven, and twelve (twins), in their Johnston apartment. On September 20, Macke departed for Germany. Macke had arranged for her building's maintenance technician to check on the children at bedtime. The next day, Matt McQuary, Erin's ex-husband and father of the twins, called Johnston police from his home in Texas and requested a welfare check, reporting to the dispatcher that the children "were left alone by their mother with an unsecured firearm in the residence" after she left for Germany without arranging for adult supervision. The responding police officer found the four children alone in the apartment that evening. They said their mother was in Germany, and when asked about guns, the oldest boy led the officer "to his mother's bedroom and pointed to a pink pistol case sitting on a shelf" containing an unloaded Glock pistol next to two magazines holding "9 mm Speer hollow point bullets." A department of human services child protective assessment worker placed the children in

temporary custody with nearby relatives and later with their respective fathers.

On October 31, the State charged Erin Macke by trial information with four counts of child endangerment in violation of Iowa Code section 726.6(1)(*a*) (2018) and one count of violating section 724.22(2) (transfer of pistol to a minor). On February 26, 2018, Macke's defense attorney filed a "Petition to Plead Guilty (Alford)," which recited a plea agreement with the State as follows: "<u>Alford plea to Counts 1–4 of TI; joint Recommendation of Deferred Judgment and Probation. State will dismiss Ct. 5.</u>" The document was signed by Macke and her counsel but lacked a signature line for the State and was not signed by the prosecutor. The district court conducted a plea hearing the same morning. Defense counsel stated on the record that the plea agreement included dismissal of "the gun charge, in this case, as well as the recommendation—joint recommendation of a deferred judgment to the charges" of child endangerment. The State did not object to that description of the plea agreement or assert different terms. The court did not ask the State to confirm the terms of the plea agreement recited by defense counsel. The court on the record accepted Macke's *Alford* plea to the four counts of child endangerment and ordered a PSI (presentence investigation). Within minutes, the court entered a written order accepting the *Alford* plea, which set forth an inconsistent plea agreement.

> Barring any new criminal activity or violation of this order, at sentencing the parties will recommend: ***The Defendant will ask for a deferred judgement and probation. The State reserves its recommendations until it has an opportunity to review the PSI.*** The State will recommend dismissal of ***Count V***. On any new criminal charge or violation of this order, established by a preponderance of evidence, the State is not bound by this agreement.

This order, on a form apparently provided by the Polk County Attorney's Office, was not read aloud in court, nor was Macke questioned about its terms during the plea hearing. Macke's counsel filed no objection.

The department of correctional services completed the PSI on April 10 and included a sentencing recommendation of "supervised probation." The same judge who accepted Macke's *Alford* plea conducted the sentencing hearing on April 19. Macke attended with her counsel, and the same prosecutor represented the State. Macke's counsel requested a deferred judgment. When the court asked for the State's sentencing recommendation, the prosecutor responded by criticizing Macke's conduct and recommending a suspended sentence and probation, not a deferred judgment.

> As you recall, this is the case where four children were left alone for a period of time while the defendant left the country and went to Germany. And although there was a superintendent of the building where the children lived asked by the defendant to check on them, at the end of the day, they really had no supervision. They were required to make meals, get on the school bus, get dressed, and take care of themselves.

> The hazard to the children is immense. Aside from the fact that it's a dangerous world, there was no adult living in the house that could have been available should there have been a medical emergency, a fire, or the possibility of an injury. It's just a dangerous situation for children.

> The children have been removed from the defendant. They have dads who are protective. Two went to live in Texas. Two have lived in Cedar Rapids. And their dads are very protective of them. And it's the State's position that those children are in settings where their best interests will be watched, because of how precious they are, Your Honor.

> Our position is that the defendant should receive a suspended sentence and probation, that as a condition of probation, and in accordance with what the PSI sets out, she should have whatever therapy and/or counseling is available to her through the Department of Corrections, and that she'd agree to do — at least with the children in Cedar Rapids, that she and her ex-husband in Cedar Rapids have agreed to counseling for these children in a setting that would be best

for them. But I think she needs counseling too. Her behavior was immature and reckless.

The State has agreed to dismiss Count V.

So, Your Honor, we're asking that she receive a suspended sentence and probation. I'm not arguing for consecutive sentences, Your Honor. I think it's okay for these counts to run concurrently. But to do something less than place her on probation and give a suspended sentence, I think, would diminish the nature of this crime.

Macke's counsel asked to "take a break for a moment" to step into the hallway before the court resumed the hearing with a victim-impact statement. Macke's defense counsel never objected to the State's sentencing recommendation. The sentencing judge stated, "I will follow the State's recommendation in this circumstance" and sentenced Macke to two-year concurrent suspended sentences and two years' probation. The sentencing order and judgment of conviction was entered April 19, 2018, over a year before Senate File 589 was enacted.

Macke, through new counsel, filed this direct appeal on May 14, 2018. Her appellate counsel argued that the State breached the plea agreement by recommending a suspended sentence instead of a deferred judgment and that Macke's prior counsel was ineffective in failing to object to the State's breach of the plea agreement. We transferred the case to the court of appeals. On March 20, 2019, a three-judge panel of the court of appeals affirmed Macke's convictions and sentences but preserved her ineffective-assistance claims for postconviction relief. The court of appeals determined the record was insufficient to resolve the ineffective-assistance claims on direct appeal. The legislature subsequently enacted Senate File 589, which the Governor signed into law on May 16, 2019. The law went into effect on July 1, 2019. We granted Macke's application for further review and ordered the parties to file supplemental briefs on whether the new legislation governed this appeal.

## II. Standard of Review.

"We review de novo claims of ineffective assistance of counsel arising from the failure to object to the alleged breach of a plea agreement." *State v. Lopez*, 872 N.W.2d 159, 168 (Iowa 2015).

### III. Do the Amendments to Iowa Code Sections 814.6 and 814.7 in Senate File 589 Apply to This Direct Appeal from a Judgment and Sentence Entered Before July 1, 2019?

We must decide whether the 2019 statutory amendments to Iowa Code sections 814.6 and 814.7 enacted in Senate File 589 govern our review of Macke's direct appeal from her 2018 judgment and sentence. The parties agree that the effective date of Senate File 589 is July 1, 2019,[1] but they disagree whether its amendments circumscribe our subsequent review of Macke's appeal pending on that date. This is a question of statutory interpretation.

Macke, relying on *James*, argues that her appeal is governed by the statutes in effect at the time of the district court judgment at issue. 479 N.W.2d at 290. The State responds that *James* should be overruled. The State, relying on federal authority, argues the amendments to those Code provisions are "jurisdiction stripping" and, therefore, govern pending appeals decided after July 1. We begin with the statutory text.

Iowa Code section 814.6, as amended this year, limits appeals from guilty pleas:

---

[1] "An act of the general assembly passed at a regular session of a general assembly shall take effect on July 1 following its passage unless a different effective date is stated in an act of the general assembly." Iowa Const. art. III, § 26. The parties do not contend the enactment's effective date of July 1, 2019, means it applies to appeals from rulings entered previously. "A statement that a statute will become effective on a certain date does not even arguably suggest that it has any application to conduct that occurred at an earlier date." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 257, 114 S. Ct. 1483, 1493 (1994).

> 1. Right of appeal is granted the defendant from:
>
> *a.* A final judgment of sentence, except ~~case of~~ in the following cases:
>
> . . . .
>
> (3) A conviction where the defendant has pled guilty. This subparagraph does not apply to a guilty plea for a class "A" felony or in a case where the defendant establishes good cause.

2019 Iowa Acts ch. 140, § 28 (to be codified at Iowa Code § 814.6(1)(*a*) (2020)).

Section 814.7 as amended in Senate File 589 eliminates the ability to pursue ineffective-assistance claims on direct appeal:

> An ineffective assistance of counsel claim in a criminal case shall be determined by filing an application for postconviction relief pursuant to chapter 822. The claim need not be raised on direct appeal from the criminal proceedings in order to preserve the claim for postconviction relief purposes, and the claim shall not be decided on direct appeal from the criminal proceedings.

*Id.* § 31 (to be codified at Iowa Code § 814.7).

As noted, our long-standing precedent holds that "unless the legislature clearly indicates otherwise, 'statutes controlling appeals are those that were in effect at the time the judgment or order appealed from was rendered.'" *James*, 479 N.W.2d at 290 (quoting *Ontjes*, 224 Iowa at 118, 275 N.W. at 330). Roger James was an inmate found guilty of violating prison disciplinary rules. *Id.* at 288. He filed an application for postconviction relief after exhausting his administrative remedies. *Id.* at 288–89. The district court denied his application on June 20, 1990. *Id.* at 289. At that time, "a postconviction applicant had a right of direct appeal from adverse prison disciplinary rulings." *Id.* But a statutory amendment effective July 1, 1990, abrogated the right of direct appeal from prison disciplinary rulings and limited such a challenge to a writ of certiorari. *Id.* James filed his notice of appeal on July 16, and the State

moved to dismiss his appeal based on the statutory amendment, which fits the State's description today of a jurisdiction-stripping enactment. *Id.* at 289–90. James resisted, arguing his right to appeal "became fixed at the time of the postconviction court's final judgments." *Id.* at 290. We agreed with James and concluded that he had "the right to direct appeal in accordance with the pre-amended version of Iowa Code section 663A.9." *Id.*

*James* is controlling here and dictates the same result. Macke had a right of direct appeal of her ineffective-assistance claim at the time of her guilty-plea based sentence from which she appeals, and her pending appeal is governed by the preamendment versions of Iowa Code sections 814.6 and 814.7. *See id.* The holding of *James* applies to both section 814.6 and section 814.7.

The State urges us to overrule *James.* Stare decisis dictates that we decline the State's invitation to overrule our precedent. *See Book v. Doublestar Dongfeng Tyre Co.*, 860 N.W.2d 576, 594 (Iowa 2015) ("Stare decisis alone dictates continued adherence to our precedent absent a compelling reason to change the law."); *Ackelson v. Manley Toy Direct, L.L.C.*, 832 N.W.2d 678, 688 (Iowa 2013) ("We are slow to depart from stare decisis and only do so under the most cogent circumstances."). The State has not provided us with a compelling reason to overrule *James.*

*James* honors the canons of construction codified by the legislature. "A statute is presumed to be prospective in its operation unless expressly made retrospective." Iowa Code § 4.5 (2018); *see also Iowa Beta Chapter of Phi Delta Theta Fraternity v. State*, 763 N.W.2d 250, 266 (Iowa 2009) ("Generally, a newly enacted statute is presumed to apply prospectively, unless expressly made retrospective."). The State concedes that neither section 814.6 nor section 814.7 are expressly retroactive.

The State's position on retroactivity conflicts with Iowa Code section 4.13(1), which provides, "The . . . amendment . . . of a statute does not affect . . . [t]he prior operation of the statute or any prior action taken under the statute . . . [or] [a]ny . . . right . . . previously acquired . . . under the statute." Macke held a right to a direct appeal from her judgment of conviction and sentence in 2018, and applying Senate File 589 retroactively to her appeal would eliminate that right, contrary to Iowa Code section 4.13(1)(*a–b*). *See State v. Soppe*, 374 N.W.2d 649, 652–53 (Iowa 1985) (applying Iowa Code section 4.13(1) to hold that statutory amendment enhancing punishment "could not take [away a] right" a defendant acquired earlier); *see also In re Daniel H.*, 678 A.2d 462, 466–68 (Conn. 1996) (holding "the removal of a right to a direct appeal [of a juvenile transfer order] is also a substantive change in the law" that applies only prospectively and not retroactively to cases predating statutory amendment).

The State contends *James* is no longer good law after *Hannan v. State*, 732 N.W.2d 45 (Iowa 2007). We disagree. These cases are easily harmonized: the statute in *James* applied only prospectively because it eliminated a right to appeal, while the statute in *Hannan* applied retroactively because it created a new remedy. "[W]e do allow a statute to apply retroactively when the statute provides an additional remedy to an already existing remedy or provides a remedy for an already existing loss." *Iowa Beta Chapter*, 763 N.W.2d at 267. Conversely, "we have refused to apply a statute retrospectively when the statute eliminates or limits a remedy. In the latter situation, we have found the statute to be substantive rather than procedural or remedial." *Id.* (citation omitted).

In *Hannan*, the defendant's conviction for second-degree sexual abuse was affirmed on direct appeal in 1999. *State v. Hannan*,

Nos. 9–312, 98–0343, 1999 WL 710813, at *1 (Iowa Ct. App. July 23, 1999). He then brought a postconviction action alleging, for the first time, ineffective assistance of trial counsel. *Hannan*, 732 N.W.2d at 49. The State argued he failed to preserve error on his ineffective-assistance claim because he failed to bring it in his direct appeal, as our law previously required. *Id.* at 50. Hannan relied on a statutory amendment enacted in 2005 that "allows a defendant to raise ineffective-assistance-of-counsel claims for the first time in [postconviction relief] PCR proceedings." *Id.* The State argued that the 2005 statutory amendment did not benefit Hannan because the criminal judgment he challenged "occurred long before the effective date of the statute." *Id.* Hannan argued the new statute controlled his appeal from the PCR judgment entered after the new statute's effective date. *Id.* at 51. We acknowledged the *James* rule that "statutes controlling appeals are those that were in effect at the time the judgment or order appealed from was rendered." *Id.* at 50 (quoting *Wal-Mart Stores, Inc. v. Caselman*, 657 N.W.2d 493, 498 (Iowa 2003)). We did not retreat from the *James* rule but, instead, decided *Hannan* by applying the *new remedy* enacted in 2005 retroactively.

The State argues the amendment to section 814.7 merely changes the forum for ineffective-assistance claims, without eliminating the right to relief altogether. This statutory change, however, results in significant disadvantages to some defendants and can mean the difference between freedom and incarceration while the case proceeds. A direct appeal is typically a much faster vehicle for relief and allows for release on appeal bond for certain offenses. *See* Iowa Code § 811.5 (governing appeal bonds). By contrast, postconviction proceedings often take much longer while defendants remain incarcerated without a right to release on bond. *Summage v. State*, 579 N.W.2d 821, 823 (Iowa 1998) (per curiam) (holding

appeal bonds are not available in postconviction proceedings); *see also State v. Brubaker*, 805 N.W.2d 164, 170–71 (Iowa 2011) ("[P]reserving ineffective-assistance-of-counsel claims that can be resolved on direct appeal wastes time and resources." (quoting *State v. Truesdell*, 679 N.W.2d 611, 616 (Iowa 2004)).

The State also argues that applying the 2019 statutory amendments to pending appeals furthers the legislative goals of curtailing frivolous appeals and ensuring ineffective-assistance-of-counsel claims are heard in a forum where the necessary record can be developed. But we must apply the new enactment as written, not by what the legislature might have said or intended. Missing from the amendments to Iowa Code sections 814.6 and 814.7 is any language stating the provisions apply retroactively to cases pending on direct appeal on July 1, 2019, or to guilty pleas accepted before that date. The clear indication of intent for retroactive application must be found in the text of the statute; legislative history is no substitute. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 288, 114 S. Ct. 1522, 1522 (1994) (Scalia, J., concurring in the judgment) ("No legislative history can [supply the clear statement required for retroactive application], only the text of the statute.").

We presume the legislature is aware of our cases interpreting its statutes and the rules established within them. *See Ackelson*, 832 N.W.2d at 688. We made clear in *James* that unless the legislature clearly provides otherwise, an enactment restricting a right to appeal will only apply prospectively. If the legislature wanted the amendments to Iowa Code sections 814.6 and 814.7 to apply retroactively, it had to say so expressly. It did not. *See Brewer v. Iowa Dist. Ct.*, 395 N.W. 2d 841, 843 (Iowa 1986) ("If it had been the purpose of the 1984 amendment [adding a three-year statute of limitations to the postconviction-relief statute] to abate pending

proceedings as well as to limit the time for commencing new proceedings, we believe the legislature would have made that intention clear."). Given the absence of an express legislative directive to apply the amended sections 814.6 and 814.7 to pending appeals, we decline to change the rules after the game is played.

The State turns to federal law to argue we should revisit *James* in light of a discussion in the subsequent United States Supreme Court *Landgraf* decision, noting federal courts have "regularly applied intervening statutes conferring or ousting jurisdiction, whether or not jurisdiction lay when the underlying conduct occurred or when suit was filed." 511 U.S. 244, 274, 114 S. Ct. 1483, 1501–02 (1994) (majority opinion) (citing cases dating back to 1870). Justice Scalia's concurrence elaborated, "[T]he purpose of provisions conferring or eliminating jurisdiction is to permit or forbid the exercise of judicial power—so that the relevant event for retroactivity purposes is the moment at which that power is sought to be exercised." *Id.* at 293, 114 S. Ct. at 1525 (Scalia, J., concurring in the judgment). *Landgraf* did not actually interpret a jurisdiction-stripping statute. Rather, *Landgraf* held that a 1991 amendment adding money damage remedies and a right to a jury trial in Title VII of the Civil Rights Act did not apply to cases arising before its enactment. *Id.* at 283, 286, 114 S. Ct. at 1506, 1508 (majority opinion).

The State contends the 2019 amendments to Iowa Code sections 814.6 and 814.7 are jurisdiction-stripping and govern appellate adjudications after July 1 of this year regardless of the date of the district court judgment or guilty plea at issue. The State cites no Iowa precedent following this federal jurisdiction-stripping canon, and the State's effort to apply it here conflicts with *James* and our prior precedent. *See Frink v. Clark,* 226 Iowa 1012, 1017, 285 N.W. 681, 684 (1939) ("This court has

expressly recognized that, after the commencement of an action, the question of jurisdiction is purely judicial and a legislative act, which attempts to deprive the court of jurisdiction, is unconstitutional."); *McSurely v. McGraw*, 140 Iowa 163, 167, 118 N.W. 415, 418 (1908) ("When action is once commenced the question of jurisdiction s purely a judicial one, and the Legislature should not attempt to usurp the functions of the judiciary by such an act as is now under consideration. These principles are so fundamental as scarcely to need the citation of authorities in their support."). Under *James*, the relevant "event" for determining the governing law is the entry of the district court judgment being appealed, not the appellate court's adjudication. 479 N.W.2d at 290. In any event, the State exaggerates the force of the jurisdiction-stripping canon.

More recently, in *Hamdan v. Rumsfeld*, the Supreme Court emphasized that jurisdiction-stripping provisions do not necessarily "apply to cases pending at the time of their enactment." 548 U.S. 557, 577, 126 S. Ct. 2749, 2765 (2006). " '[N]ormal rules of construction,' including a contextual reading of the statutory language, may dictate otherwise." *Id.* (alteration in original) (quoting *Lindh v. Murphy*, 521 U.S. 320, 326, 117 S. Ct. 2059, 2063 (1997)). Unlike *Landgraf*, *Hamdan* actually interpreted a jurisdiction-stripping statute, the Detainee Treatment Act (DTA). Salim Ahmed Hamdan, a Yemeni national, was captured during hostilities with the Taliban in Afghanistan and transported to Guantanamo Bay in 2002. *Id.* at 566, 126 S. Ct. at 2759. His petition for a writ of certiorari was pending in the Supreme Court when the DTA was signed into law in 2006, and the United States moved to dismiss his petition on grounds the DTA deprived the Court of jurisdiction. *Id.* at 572, 126 S. Ct. at 2762. The Court denied the motion, noting the "presumption" that a jurisdiction-stripping statute applies to pending

appeals "is more accurately viewed as the nonapplication of another presumption . . . against retroactivity—in certain limited circumstances" such as when "the change in the law does not 'impair rights a party possessed when he acted.' " *Id.* at 576–77, 126 S. Ct. at 2764–65 (quoting *Landgraf*, 511 U.S. at 280, 114 S. Ct. at 1505). As noted, the amendments to Iowa Code sections 814.6 and 814.7, if applicable, would impair Macke's existing right to a direct appeal of her guilty plea and ineffective-assistance-of-counsel claims, such that the presumption *against* retroactivity applies.

The *Hamdan* Court rejected retroactive application of the DTA under a different canon, the "familiar principle of statutory construction . . . that a negative inference may be drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute." *Id.* at 578, 126 S. Ct. at 2765. Noting other provisions of the DTA were expressly made applicable to pending cases, the omission of such language in the jurisdiction-stripping section meant it did not apply to pending appeals. *Id.* at 579–80, 126 S. Ct. at 2766.[2]

We apply the same canon here and reach the same result. We, too, have recognized that legislative intent is expressed through selective placement of statutory terms. *Oyens Feed & Supply, Inc. v. Primebank*, 808 N.W.2d 186, 193 (Iowa 2011). As such, when the legislature includes particular language in some sections of a statute but omits it in others, we presume the legislature acted intentionally. *Id.* In other sections of Senate File 589, the legislature expressly states the section applies prospectively

---

[2]The State cites no contrary authority decided after *Hamdan* (and we found none) applying the jurisdiction-stripping canon to hold that a statutory amendment governs pending appeals when the provision at issue lacks language requiring that result while other provisions in the same amendment do contain an express statement of retroactivity or applicability to pending cases.

or retrospectively or both. *Compare* 2019 Iowa Acts ch. 140, § 2 (to be codified at Iowa Code § 901C.3(7) (2020)) ("This section applies to a misdemeanor conviction that occurred prior to, on, or after July 1, 2019."), *id.* § 8 (to be codified at Iowa Code § 902.12(2A)) ("A person serving a sentence for a conviction for robbery in the first degree in violation of section 711.2 for a conviction that occurs on or after July 1, 2018, shall be denied parole or work release until the person has served between one-half and seven-tenths of the maximum term of the person's sentence as determined under section 901.11, subsection 2A."), *and id.* § 39 (to be codified at Iowa Code § 902.12(4)) ("A person serving a sentence for a conviction for arson in the first degree in violation of section 712.2 that occurs on or after July 1, 2019, shall be denied parole or work release until the person has served between one-half and seven-tenths of the maximum term of the person's sentence as determined under section 901.11, subsection 4."), *with id.* § 28 (to be codified at Iowa Code § 814.6) (providing no specific effective date), *and id.* § 31 (to be codified at Iowa Code § 814.7) (same). We conclude the absence of retroactivity language in sections 814.6 and 814.7 means those provisions apply only prospectively and do not apply to cases pending on July 1, 2019.

Our decision in *James* placed the legislature on notice that it must clearly specify when a provision limiting a right to appeal is to apply to pending cases. *James*, 479 N.W.2d at 290. As the *Landgraf* Court observed,

> Requiring clear intent assures that Congress itself has affirmatively considered the potential unfairness of retroactive application and determined that it is an acceptable price to pay for the countervailing benefits. Such a requirement allocates to Congress responsibility for fundamental policy judgments concerning the temporal reach of statutes, and has the additional virtues of giving legislators a predictable background rule against which to legislate.

511 U.S. at 272–73, 114 S. Ct. at 1501. We agree.

Because we hold Senate File 589's amendments to Iowa Code sections 814.6 and 814.7 do not govern this appeal, we do not reach Macke's constitutional claim that retroactive application of those laws would violate state and federal due process. Nor do we reach her argument that the breach of her plea agreement constituted "good cause" allowing an appeal of her guilty plea under section 814.6, as amended.

## IV. Did the State Breach the Plea Agreement?

We now address the merits of Macke's appeal. "[B]ecause a plea agreement requires a defendant to waive fundamental rights, we are compelled to hold prosecutors and courts to the most meticulous standards of both promise and performance." *Lopez*, 872 N.W.2d at 171 (quoting *State v. Bearse*, 748 N.W.2d 211, 215 (Iowa 2008)). We must decide whether the State's sentencing recommendation breached the parties' plea agreement. If so, Macke's counsel was ineffective for failing to object to the breach, we presume prejudice, and her remedy is to be "resentence[d] by a different judge, with the prosecutor obligated to honor the plea agreement and sentencing recommendation." *Id.* at 180–81. Our threshold question is whether the record in this direct appeal is sufficient to resolve that question. The court of appeals concluded the record was insufficient and preserved Macke's ineffective-assistance-of-counsel claim for postconviction proceedings. On our de novo review, we find the record is sufficient under the rules governing guilty pleas. We find the parties' plea agreement included a term to jointly recommend a deferred judgment, and the State breached that agreement, requiring a remand for resentencing.

Macke's petition to plead guilty (*Alford*), signed by Macke and her counsel, stated, "The plea agreement is <u>Alford plea to Counts 1-4 of [Trial Information]; joint Recommendation of Deferred Judgment and Probation</u>. <u>State will dismiss Ct. 5</u> [the gun charge]." Macke's counsel during the plea hearing represented to the court on the record that the plea agreement was for dismissal of "the gun charge in this case, as well as the recommendation—joint recommendation of a deferred judgment to the charges" of child endangerment. The State did not object to that description of the plea agreement or assert different terms, nor did the court ask the State to confirm the terms of the plea agreement in open court. The court accepted Macke's plea, but within minutes issued a written order on a form apparently provided by the Polk County Attorney's Office reciting a plea agreement with different terms: "The Defendant will ask for a deferred judgement and probation. The State reserves its recommendations until it has an opportunity to review the PSI." The written order, however, was not read or shown to Macke during the hearing. So what were the terms of the parties' plea agreement, if any, as to a sentencing recommendation?

We view the record in light of the governing rules. Iowa Rule of Criminal Procedure 2.10(2) provides, "If a plea agreement has been reached by the parties the court shall require the disclosure of the agreement in open court at the time the plea is offered." *Accord* Iowa R. Crim. P. 2.8(2)(*c*) ("The terms of any plea agreement shall be disclosed of record as provided in rule 2.10(2)."). The purpose of requiring disclosure "in open court" is to allow a colloquy to ensure that the defendant's plea is knowing, intelligent, and voluntary. *Id.* r. 2.8(2)(*b*); *State v. Loye*, 670 N.W.2d 141, 150–51 (Iowa 2003). The controlling terms, therefore, are those described on the record during the plea hearing rather than the

conflicting terms of the written order because the written order was never reviewed with Macke in open court. *See Loye*, 670 N.W.2d at 153–54 ("A written plea agreement is not a substitute for the in-court colloquy required by rule 2.8(2)(*b*) in felony cases.").

In *Loye*, the court accepted the defendant's guilty plea to multiple offenses and transferred her case to drug court for supervision. *Id.* at 144. She was unsuccessful in drug court, and the court then imposed consecutive prison sentences totaling sixty-four and one-half years. *Id.* She appealed her sentence, and the State contended she had waived her right to appeal in her plea agreement. *Id.* at 147. We rejected the State's waiver argument because the plea agreement was not in the record and was not reviewed with Loye in open court during her guilty plea hearing, as required by rule 2.8(2)(*b*). *Id.* at 153–54; *see also Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) ("It is impossible for a trial judge to properly administer a plea agreement if it consists of secret terms known only to the parties."). The record of the proceedings in open court controls our analysis, not any off-the-record side deals.

Here, we lack an affirmative statement by the prosecutor on the record that the State agreed to jointly recommend a deferred judgment and probation for Macke. We urge judges conducting plea hearings to ensure that counsel for the defendant and the State orally confirm the terms of any plea agreement in open court. In any event, on our de novo review, we infer the State's acceptance from the prosecutor's silence when Macke's counsel recited their plea agreement with that term in open court. Macke entered her *Alford* plea with the express understanding that the State would jointly recommend a deferred judgment, and the court accepted her plea on that record. If defense counsel misstated the terms of the plea agreement, the prosecutor should have said so in open court. We are

unwilling to assume the plea agreement was later modified or waived off the record. To be enforceable against the defendant, a change in the terms of the plea agreement must be made in open court with a colloquy to confirm the defendant's guilty plea is knowing and voluntary.

The State at the sentencing hearing recommended a two-year prison sentence, suspended. The State thereby breached the parties' plea agreement to jointly recommend a deferred judgment and probation. Defense counsel "was duty-bound to object." *Lopez*, 872 N.W.2d at 169. His failure to object constitutes ineffective assistance of counsel, with prejudice to Macke presumed. *Id.* at 169–70. Macke requests resentencing. We have noted that "violations of either the terms or the spirit of the agreement require reversal of the conviction or vacation of the sentence." *Id.* at 171 (quoting *Bearse*, 748 N.W.2d at 215). We remand the case for resentencing by a different judge. *See id.* at 181. On remand, the prosecutor is required to honor the plea agreement by jointly recommending a deferred judgment. *See id.*

**V. Disposition.**

For the foregoing reasons, we vacate the decision of the court of appeals. We affirm Macke's conviction but vacate her sentence and remand the case for resentencing before a different judge consistent with this opinion.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT CONVICTION AFFIRMED, SENTENCE VACATED, AND CASE REMANDED FOR RESENTENCING WITH INSTRUCTIONS.**

All justices concur except Mansfield, J., who concurs in part and dissents in part, and McDonald, J., who dissents.

**MANSFIELD, Justice (concurring in part and dissenting in part).**

I concur in Division III of the court's opinion. I dissent from Division IV. I believe the record is inadequate to determine what the parties' plea agreement was.

The parties apparently reached a plea agreement. From the record it is unclear whether it involved a joint recommendation of a deferred judgment, which is what defense counsel said in the petition to plead guilty and in open court at the change of plea hearing; or whether the State had the right to make an independent sentencing recommendation, which is what the order entered at the plea hearing stated. I note that the plea hearing commenced at 9:06 a.m. and concluded at 9:12 a.m. on February 26, 2018, whereas the order was efiled at 9:11 a.m. on the 26th. In other words, it appears the court was finalizing the order during the change of plea hearing itself. And they contradict each other.

Defense counsel never objected to the court's order. Moreover, a fairly lengthy sentencing proceeding occurred nearly two months later on April 19. The proceeding took approximately forty minutes of court time, and there was considerable discussion and debate regarding the sentence. Yet defense counsel—while asking for a deferred judgment on behalf of his client—never claimed there was an *agreement* to jointly recommend a deferred judgment.

Reasonable people can wonder, therefore, what the deal was.

Two possibilities exist here. One is that the parties actually had an agreement to jointly recommend a deferred judgment. In that event, the State breached the plea agreement and it should be enforced.

The other possibility, however, is that the parties' plea agreement did not include a joint sentencing recommendation. In that event, we

should not enforce something the parties didn't actually agree to. Instead, because the colloquy on February 26 was defective if that was the agreement, the plea should be set aside.

The majority confuses what is a necessary condition of court approval of a plea agreement (i.e., recital of the plea agreement in open court on the record) with what constitutes the actual agreement. Whatever the parties agree to has to be recited. However, the converse is not always true: whatever a party says in open court is not necessarily the agreement. Something that one party recited but that wasn't actually agreed to should not be controlling. Plea bargains are akin to contracts. *Rhoades v. State*, 880 N.W.2d 431, 449 (Iowa 2016) ("A plea bargain also may be regarded as a contract where both sides ordinarily obtain a benefit."). Would anyone say it is clear on this record what the parties' contract was?

I would reverse Macke's conviction and sentence and remand for the court to conduct a hearing to determine whether there was an agreement to jointly recommend a deferred judgment. If so, the agreement should be enforced and there should be a resentencing before a different judge on that basis. If not, there was no valid plea and the parties should be restored to their pre-plea positions.

For the foregoing reasons, I respectfully concur in part and dissent in part.

**McDONALD, Justice (dissenting).**

Effective July 1, 2019, this court lost the authority to decide a claim of ineffective assistance of counsel on direct appeal. *See* 2019 Iowa Acts ch. 140, § 31 (to be codified at Iowa Code § 814.7 (2020)) (providing "[a]n ineffective assistance of counsel claim . . . <u>shall not be decided on direct appeal from the criminal proceedings</u>"). Nonetheless, in this direct appeal, the majority decides the defendant's claim of ineffective assistance of counsel after the effective date of the statute. I respectfully dissent.

I.

Whether a statute applies retrospectively, prospectively, or both is simply a question regarding the correct temporal application of a statute. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 291, 114 S. Ct. 1522, 1524 (1994) (Scalia, J., concurring in the judgment) (stating this is a "mundane question" regarding the "temporal application of a statute"). The determination of the correct temporal application of a statute is three-part inquiry.

First, the court must determine whether application of a statute is in fact retrospective. Application of a statute is in fact retrospective when the statute applies a new rule, standard, or consequence to a prior act or omission. *See Frideres v. Schiltz*, 540 N.W.2d 261, 264 (Iowa 1995) ("A law is retroactive if it affects acts or facts which occurred, or rights which accrued, before the law came into force."). The prior act or omission is the event of legal consequence "that the rule regulates." *Landgraf*, 511 U.S. at 291, 114 S. Ct. at 1524. In other words, the event of legal consequence is the specific conduct regulated in the statute.

Second, if the court determines operation of a statute is in fact retrospective, the court must determine whether the statute should be

applied retrospectively. This is straight-forward inquiry. "Our legislature has provided a statutory general rule that determines the applicability of its laws." *Frideres*, 540 N.W.2d at 264. Iowa Code section 4.5 (2018) provides "[a] statute is presumed to be prospective in its operation unless expressly made retrospective." In my view, this requires an assessment of statutory text to determine whether there is an express statement making the statute retrospective. End of inquiry.

Third, if the court determines the text of the statute authorizes retrospective application of the statute, the court must then determine whether any other rule of law prohibits retrospective application of the statute. For example, the defendant might argue the retrospective application of a statute violated her right to due process or violates the Ex Post Facto Clause.

II.

At issue is the temporal application of amendments to Iowa Code sections 814.6 and 814.7 enacted in Senate File 589 (the Omnibus Crime Bill). I address each in turn.

A.

Iowa Code section 814.6 governs the criminal defendant's right to appeal. At the time judgment of sentence was entered in this case, section 814.6 provided, with minor exceptions not applicable here, a defendant was authorized to pursue a direct appeal from any final judgment of sentence. *See* Iowa Code § 814.6(1)(*a*) ("Right of appeal is granted the defendant from . . . [a] final judgment of sentence . . . ."). The Omnibus Crime Bill changed this provision. The statute now provides, with exceptions not applicable here, a criminal defendant does not have an appeal as a matter of right from judgment of sentence if the judgment of sentence was entered pursuant to a conviction following a guilty plea. *See*

2019 Iowa Acts ch. 140, § 28 (to be codified at Iowa Code § 814.6(1)(*a*)(3) (2020)).

In determining whether this amendment governs the defendant's right to appeal in this case, the first inquiry is whether application of the amendment is in fact retrospective. It seems clear to me it is. The event of legal consequence is the entry of judgment of sentence. Judgment of sentence was entered in April 2018. The defendant timely appealed as a matter of right from the entry of judgment of sentence. The application of the amendment to an event of consequence antedating the effective date of the amendment is in fact a retrospective application of the statute.

Having concluded the application of the amendment to this case is in fact retrospective, the second inquiry is whether the legislature authorized retrospective application of the statute. *See* Iowa Code § 4.5 (2018). Here, there is no statutory language authorizing the retrospective application of the statute. Thus, the statute operates only prospectively and cannot change the legal consequence of the entry of judgment and sentence. *See id.* Because the text of the statute does not provide for retrospective application, there is no need to proceed to the third step of the test. I thus concur in the majority's holding that the defendant can pursue this appeal as a matter of right.

B.

Iowa Code section 814.7 governs the presentation and disposition of a claim of ineffective assistance of counsel on direct appeal. At the time the defendant filed her notice of appeal in this case, the Code authorized the defendant to present a claim of ineffective assistance of counsel. *See* Iowa Code § 814.7(2) ("A party may, but is not required to, raise an ineffective assistance claim on direct appeal from the criminal proceedings . . . ."). The Code also authorized this court to "decide the claim" or

"preserve the claim for determination" in postconviction-relief proceedings. *Id.* § 814.7(3). The Omnibus Crime Bill changed this provision. The amendment restricted this court's authority to decide claims of ineffective assistance of counsel on direct appeal, providing "<u>the claim shall not be decided on direct appeal from the criminal proceedings</u>." 2019 Iowa Acts ch. 140, § 31 (to be codified at Iowa Code § 814.7 (2020)).

In determining whether this amendment governs the defendant's right to bring this claim in this case, the first inquiry is whether application of the amendment is in fact retrospective. With respect to this amendment, the event of legal consequence is this court's exercise of judicial power—specifically, this court's authority to decide a claim of ineffective assistance of counsel on direct appeal. As Justice Scalia explained in *Landgraf*, applying a statute to prevent the exercise of judicial power after the effective date of a statute is in fact a prospective application of a statute:

> Our jurisdiction cases are explained, I think, by the fact that the purpose of provisions conferring or eliminating jurisdiction is to permit or forbid the exercise of judicial power—so that the relevant event for retroactivity purposes is the moment at which that power is sought to be exercised. Thus, applying a jurisdiction-eliminating statute to undo past judicial action would be applying it retroactively; but applying it to prevent any judicial action after the statute takes effect is applying it prospectively.

*Landgraf*, 511 U.S. at 293, 114 S. Ct. at 1525.

While this case does not involve the court's jurisdiction, it does involve the court's authority to exercise judicial power. Thus, properly understood, application of the amendment is not in fact a retrospective application of the statute. Instead, it is a prospective application of the statute to this court's exercise of judicial power occurring after the effective date of the amendment. *See Republic Nat'l Bank of Miami v. United States,*

506 U.S. 80, 100, 113 S. Ct. 554, 565 (1992) (Thomas, J., concurring in part and concurring in the judgment) ("But not every application of a new statute to a pending case will produce a 'retroactive effect.' '[W]hether a particular application *is* retroactive' will 'depen[d] upon what one considers to be the determinative event by which retroactivity or prospectivity is to be calculated.' " (alterations in original) (quoting *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 857–58, 857 n.3, 110 S. Ct. 1570, 1587–88, 1588 n.3 (1990) (Scalia, J., concurring in the judgment))); *State v. Blank*, 930 P.2d 1213, 1223 (Wash. 1997) (en banc) ("A statute operates prospectively when the precipitating event for [its] application . . . occurs after the effective date of the statute . . . ." (alterations in original) (quoting *Aetna Life Ins. v. Wash. Life & Disability Ins. Guar. Ass'n*, 520 P.2d 162, 170 (Wash. 1974) (en banc))). Because this amendment does not in fact operate retrospectively, there is no need to analyze the question under the second and third parts of the test.

The majority opinion's conclusion that *James v. State*, 479 N.W.2d 287 (Iowa 1991), precludes application of the amendment to section 814.7 is a misreading of *James*. At issue in *James* was whether the applicants had the right to appeal from prison disciplinary rulings. *See id.* at 290. "The statute controlling appeals from prison disciplinary rulings which was in effect on that date provided for a right of direct appeal." *Id.* The court held "[b]ecause statutes controlling appeals are those that were in effect at the time the judgment or order appealed from was rendered," the applicants had the right to appeal. *Id. James* was limited to the question of whether the applicants had the ability to pursue an appeal as a matter of right. The event of legal consequence in that case was the entry of the rulings in the prison disciplinary cases. There is nothing in *James* that addresses the question presented in this case—what statute controls the

exercise of judicial power at the time the power is exercised. *James* is simply inapplicable to the question regarding the correct temporal application of the amendment to section 814.7.

Contrary to the majority's interpretation of *James*, the general rule is that statutes eliminating or restricting the exercise of judicial power after the date of enactment do not raise concerns regarding retroactivity. *See, e.g., St. Cyr v. INS*, 229 F.3d 406, 420 (2d Cir. 2000), *aff'd*, 533 U.S. 289, 290–91, 121 S. Ct. 2271, 2274–75 (2001) ("It is true that a change in law that 'speak[s] to the power of the court rather than to the rights or obligations of the parties' may be applied in a case without raising concerns that it is impermissibly retroactive." (alteration in original) (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 274, 114 S. Ct. 1483, 1502 (1994) (majority opinion))); *Turkhan v. Perryman,* 188 F.3d 814, 826 (7th Cir. 1999) (stating present law applies because it "speak[s] to the power of the court" (quoting *Landgraf,* 511 U.S. at 274, 114 S. Ct. at 1502)); *In re Resolution Tr. Corp.*, 888 F.2d 57, 58 (8th Cir. 1989) ("[T]he general rule is otherwise with respect to new enactments changing procedural or jurisdictional rules. If a case is still pending when the new statute is passed, new procedural or jurisdictional rules will usually be applied to it."); *Henry v. Ashcroft*, 175 F. Supp. 2d 688, 693 (S.D.N.Y. 2001) (stating that statutes "that 'speak to the power of the court' . . . generally do not raise concerns about retroactivity" (quoting *Landgraf*, 511 U.S. at 274, 114 S. Ct. at 1502)); *DeGroot v. DeGroot*, 939 A.2d 664, 670 n.5 (D.C. 2008) (stating "a court may apply new laws to pending cases when those laws 'speak to the power of the court' " (quoting *Coto v. Citibank FSB*, 912 A.2d 562, 566 n.4 (D.C. 2006)); *State v. Barren*, 279 P.3d 182, 185 (Nev. 2012) (stating present law governs and that "a retroactivity analysis is unnecessary because [it] is a jurisdictional statute"); *Univ. of Texas Sw.*

*Med. Ctr. at Dallas v. Estate of Arancibia ex rel. Vasquez-Arancibia*, 324 S.W.3d 544, 548 (Tex. 2010) (stating that statutes that speak to the power of the court "may be applied to cases pending at the time of enactment").

Because the presumption against the retrospective application of a statute cannot work to bar the prospective application of a statute affecting this court's authority, I respectfully dissent from the majority's decision to resolve the defendant's claim of ineffective assistance of counsel in this direct appeal. The amendment to the statute clearly prohibits this exercise of judicial authority after July 1, 2019. I would follow the plain language of the statute and preserve the defendant's claim of ineffective assistance of counsel for postconviction-relief proceedings.

III.

The three-part test set forth and applied above is not explicitly set forth in our caselaw. However, our caselaw in this area is a Rorschach test of immaterial distinctions, unhelpful declarations, and result-oriented decisions. The majority opinion does its best to defend the old doctrine, but when the presumption against the retrospective application of a statute can be used to bar the prospective application of a statute, it is time to reconsider the doctrine.

The primary deficiency in our caselaw (and the majority opinion) is it ignores the initial inquiry of whether a statute is in fact retrospective. Instead of creating workable doctrine and corresponding vocabulary to resolve the threshold question of when the operation of statute *is in fact retrospective*, our caselaw has instead substituted a complex taxonomy and corresponding rules to determine when a statute *should be applied retrospectively*. Except these are wholly separate questions; substituting one for the other merely confuses the issues. *See Landgraf*, 511 U.S. at 291–92, 114 S. Ct. at 1524 (Scalia, J., concurring in the judgment) ("The

critical issue, I think, is not whether the rule affects 'vested rights,' or governs substance or procedure, but rather what is the relevant activity that the rule regulates.").

In addition to confusing the issues, the taxonomy and rules are opaque and largely unworkable in any meaningful sense. Our cases have identified at least five different categories of statutes: remedial, procedural, substantive, curative, and emergency. *See Iowa Beta Chapter of Phi Delta Theta Fraternity v. State*, 763 N.W.2d 250, 266 (Iowa 2009) ("In the absence of a legislative declaration that the statute applies retrospectively, the second step of the analysis is to determine whether the statute is procedural, remedial, or substantive."); *Bd. of Trs. of Mun. Fire & Police Ret. Sys. v. City of West Des Moines*, 587 N.W.2d 227, 230 n.4 (Iowa 1998) ("We have also determined curative legislation or emergency legislation may be given retrospective application."). Depending upon the categorization of the statute, our caselaw provides different rules, exceptions, and exceptions to exceptions that govern the temporal application of the statute.

Take, for example, remedial statutes. "A remedial statute intends to correct 'existing law or redress an existing grievance.'" *Iowa Beta Chapter*, 763 N.W.2d at 266 (quoting *Baldwin v. City of Waterloo*, 372 N.W.2d 486, 491 (Iowa 1985)). A remedial statute is one which "regulates conduct for the public good." *Iowa Comprehensive Petrol. Underground Storage Tank Fund Bd. v. Shell Oil Co.*, 606 N.W.2d 370, 375 (Iowa 2000).

> [It] affords a private remedy to a person injured by a wrongful act, corrects an existing law or redresses an existing grievance, gives a party a mode of remedy for a wrong where none or a different remedy existed, or remedies defects in the common law and in civil jurisprudence generally.

*Bd. of Trs. of Mun. Fire & Police Ret. Sys.*, 587 N.W.2d at 231. Our caselaw sets forth "a three-part test to determine" whether the legislature intended retrospective or prospective application of a remedial statute. *Anderson Fin. Servs., LLC v. Miller,* 769 N.W.2d 575, 579 (Iowa 2009); *Emmet Cty. State Bank v. Reutter,* 439 N.W.2d 651, 654 (Iowa 1989).

> First, we look to the language of the new legislation; second, we consider the evil to be remedied; and third, we consider whether there was any previously existing statute governing or limiting the mischief which the new legislation was intended to remedy.

*Iowa Comprehensive Petrol.*, 606 N.W.2d at 375 (quoting *Emmet Cty. State Bank*, 439 N.W.2d at 651). Depending upon how the court assesses those three factors, our cases generally allow retrospective application of a remedial statute. *See Iowa Beta Chapter*, 763 N.W.2d at 267 ("[W]e do allow a statute to apply retrospectively when the statute provides an additional remedy to an already existing remedy or provides a remedy for an already existing loss . . . ."). Except if the remedial statute eliminates a remedy. *See id.* ("[W]e have refused to apply a statute retrospectively when the statute eliminates or limits a remedy."). In that case, our caselaw simply reclassifies as substantive what it had previously classified as "procedural" or "remedial." *Groesbeck v. Napier,* 275 N.W.2d 388, 390–91 (Iowa 1979) (en banc) (classifying a statute as substantive because it eliminated a remedy). Why does the reclassification matter? Because substantive statutes are not applied retrospectively. *See Vinson v. Linn-Mar Cmty. Sch. Dist.*, 360 N.W.2d 108, 121 (Iowa 1984) (holding a statute was substantive because it took away a right of recovery and holding the statute thus could not be applied retrospectively).

I need not discuss any of the other categories or corresponding rules to flesh out the issue. The rules governing the temporal application of the

additional categories of statutes are equally opaque. The main point here is the categorical scheme is subject to numerous, apparent shortcomings.

First, the categorical scheme is contrary to section 4.5 of the Code, which provides a statute shall have prospective operation only unless the legislature expressly provides to the contrary. Nowhere does the Code provide for the categorical scheme set forth in our caselaw.

Second, the categorical scheme is in tension with our caselaw, which provides legislative intent controls. *See, e.g.*, *Dindinger v. Allsteel, Inc.*, 860 N.W.2d 557, 563 (Iowa 2015) ("It is well established that a statute is presumed to be prospective only unless expressly made retrospective." (quoting *Anderson Fin. Servs.*, 769 N.W.2d at 578)); *Iowa Comprehensive Petrol.*, 606 N.W.2d at 375 ("Absent an expressed indication to the contrary, statutes are generally presumed to apply prospectively."); *Emmet Cty. State Bank*, 439 N.W.2d at 654 ("The determination instead boils down to whether the legislature intended to give the amendment here retrospective or prospective application."); *Barad v. Jefferson County*, 178 N.W.2d 376, 378 (Iowa 1970) ("The question of retrospectivity is one of legislative intent. Where the legislature has clearly expressed its intent we do not resort to rules of statutory construction." (citation omitted)).

Third, our categorical approach is a rhetorical device to justify results-oriented decisions rather than an analytical device to actually decide cases. The classification of any statute as remedial, procedural, substantive, curative, or emergency is largely guesswork. While there might be straight-forward cases at either end of the spectrum, for the great number of cases, the classification is likely to turn on the court's whim. For example, as noted above, our cases specifically state that a remedial statute should be reclassified as a substantive statute if the statute eliminates a remedy. That exception seems wholly arbitrary to me. We

have an adversarial legal system. Any statute that works a debit in the ledger of one party puts a credit in the ledger of the adverse party. It is thus unclear to me why the elimination of a remedy makes a remedial statute substantive but the addition of a remedy keeps a remedial statute remedial. "The seemingly random exceptions to the Court's 'vested rights' (substance-vs.-procedure) criterion must be made, I suggest, because that criterion is fundamentally wrong." *Landgraf*, 511 U.S. at 291, 114 S. Ct. at 1524.

Because of the deficiencies in our existing caselaw, I would move away from the categorical distinctions and instead adopt the three-part test set forth in this opinion.

IV.

For these reasons, I respectfully dissent.